[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF LAW
 I
The petitioner, Donovan Davis, has filed his petition for writ of habeas corpus, alleging illegal confinement by reason of ineffective assistance of counsel and actual innocence.
A hearing on the petition was had on April 27, 1999, at which the parties were represented by counsel, testimony was heard and exhibits entered.
 II
The petitioner was the defendant in a case CR4-208201 JD, in the Judicial District of Waterbury. After jury trial he was convicted of Assault in the First Degree, in violation of General Statutes, Section 53a-59 (a)(1) on April 13, 1994, and on June 3, 1994 was sentenced to a term of fifteen years. The petitioner appealed his conviction, which conviction was affirmed, State ofConnecticut v. Donovan Davis, 39 Conn. App. 920, 235 Conn. 941
(cert. denied).
The conviction arose from an incident occurring in the City of Waterbury, around midnight of August 3, 1992, in which a victim, Willie Riddick, suffered a shotgun wound in his right CT Page 9891 side, causing serious physical injury. The shooting took place in the course of a neighborhood party, co-hosted by the petitioner. The party had begun in the afternoon and had attracted upwards of two hundred people. The party centered around an outdoor basketball court, enclosed by a high fence, with a single entry. There was a parking lot adjacent to the basketball court. Beer kegs were located in one corner of the court and food was available at a grill set up in the far corner of the court from the entrance. Riddick was shot in the parking lot. The petitioner maintains he was working at the grill at the time of the shooting and that there was no way he could have moved from the grill to the spot where the shooter stood in time to do the shooting.
 III
The petitioner first claims prosecutorial misconduct, asserting that approximately a year and a half after the shooting, the victim, Riddick, attempted to kill the petitioner with a knife; that shortly before the petitioner's trial, Riddick's charges stemming from that attempt were reduced to a mere charge of breach of peace, "in order to ensure the victim's presence in Court or in order to ensure that the state's case against" the petitioner "could go forward". The claim of prosecutorial misconduct has to do with actions taken in a case other than that of the petitioner. No evidence was introduced at the habeas hearing to establish that state action in the Riddick case resulted in any unfairness in the petitioner's trial. The petitioner has failed to establish his claim of prosecutorial misconduct.
At the time of the habeas hearing, the petitioner expanded this claim to assert that petitioner's trial counsel had a conflict of interest at the time of trial in that the public defender's office represented Riddick in the matter where Riddick was accused of assaulting Davis. This claim is equally without merit. Trial counsel was in the public defender's J.D. office. Riddick's case was in the in the geographical area court and was handled by the public defender G.A. office. There was no conflict of interest established.
It should be noted that the issue of Riddick's attack on Davis was raised at Davis' trial and Riddick testified regarding his conduct and the disposition of the charges against him. (Petitioner's Exhibit 3, Trial Transcript, April 5, 1994, pp. 116-118, 136-7.). CT Page 9892
The petitioner raises additional claims which may be characterized as prosecutorial misconduct: the petitioner claims that in closing argument the prosecutor mischaracterized an expert witness' testimony in an attempt "to rectify conflicting statements of state's witnesses concerning the number of shots heard on the night in question". An additional claim of prosecutorial misconduct was that the prosecutor, in closing argument, described the shooting as "unjustified". No testimony was introduced regarding these alleged acts of misconduct and respondent's attorney represented, without contradiction, that these issues were raised on appeal. The court finds the claims of prosecutorial misconduct, and any claim of ineffective assistance of counsel by reason of failure to object to the claimed mischaracterizations, have not been established.
 IV
The petitioner makes a number of claims concerning acts or omissions of trial counsel, which may be classified as claims of ineffective assistance of counsel.
A habeas petitioner claiming deprivation of his constitutional right to effective assistance of counsel has the burden of showing (1) that the performance of his counsel was "deficient" in that it was outside the range of reasonable professional assistance of a competent trial or appellate lawyer; and (2) that the deficient performance "prejudiced" the petitioner such that there is a reasonable probability, that, but for the deficient performance of counsel, the result would have been different, Strickland v. Washington, 466 U.S. 668, 687-94,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome, Id.
A criminal defendant is entitled to adequate and effective assistance of counsel at all critical stages of legal proceedings, Id., at 686. The right to effective assistance of counsel includes an adequate investigation of the case to determine facts relevant to the merits or to the punishment in the event of conviction, Copas v. Commissioner of Correction,234 Conn. 139, 154 (citation omitted).
"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional' CT Page 9893 assistance . . .", Id., at 689-90.
A court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance if it is easier to dispose of the claim on the ground of insufficient prejudice, Norton v. Manson, 207 Conn. 118, 124.
The petitioner's claims include: failure of trial counsel to conduct an investigation, and, specifically, to interview potential witnesses, in timely fashion; failure to consult with the petitioner or keep him informed of developments, failure to enter photographs into evidence which would depict where the grill was located vis a vis the scene of the shooting;, failure to discuss defenses with the petitioner; failure to object to a jury instruction of the trial court; failure adequately to prepare the petitioner to testify. The petitioner is particularly concerned that the delay in interviewing witnesses allowed potential witnesses to move away, memories to fade and the loss to the petitioner of potentially helpful testimony.
Trial counsel, Alan D. McWhirter, testified at the habeas hearing that he was assigned to represent the petitioner in August of 1992; that investigation began "in a general sense" when he first was assigned. Most of the investigation was done by investigators from the public defender's office; that during the period before trial, he, McWhirter, was representing the petitioner on three other matters; that the petitioner gave trial counsel a list of names of possible witnesses; that investigators attempted to contact "a number" of people; that most of the people they contacted wouldn't talk; others admitted they were present at the party the night in question, but wouldn't admit to having seen anything relating to the shooting; that no written statements were obtained early on; that it was common practice not to document instances of refusal to respond to inquiries; that investigators tried to contact potential witnesses other than those listed by the petitioner; that trial counsel "absolutely" discussed with petitioner petitioner's position, which "from day one" was, "I didn't do it"; that this theory of the case was presented to the jury; that trial counsel discussed a theory of self defense with the petitioner, who rejected such a defense; that an investigator took a written statement from Derrick Trent in March, 1994; that trial counsel visited the crime site; that trial counsel routinely would not take written statements from witnesses before trial, because discrepancies with trial testimony could be used to discredit such witnesses; CT Page 9894 that his relationship with the petitioner was contentious at times; that the petitioner "voiced his unhappiness" with the pre-trial investigative efforts a number of times.
At the habeas hearing, the petitioner testified he had visited the crime site with investigators from the public defender's office on one occasion, and had been taken by them on another occasion to Southbury Training School to take a statement from Derrick Trent.
The petitioner offered the court no standard against which to measure trial counsel's investigative and pre-trial efforts. The court finds that the petitioner has failed to establish that the investigative and pretrial preparation of trial counsel fell below the range of reasonable professional assistance of a competent trial lawyer.
Another claim of ineffective assistance of counsel has to do with photographs of the crime scene. It has always been the petitioner's contention that at the time of the shooting he was at the grill located at the far side of the basketball court. The public defender's investigator took a series of pictures of the area which included the location of the grill. The state at time of trial introduced a series of photographs of the area which did not include that part of the basketball court. Trial counsel did not seek to introduce the defense's photographs but utilized the state's photos in questioning witnesses. The petitioner considers this of great import. There was conflicting testimony at trial as to where the petitioner was located at the time of the shooting. No one corroborated the petitioner's claim he was at the grill at the precise moment of the shooting but one witness placed Davis at the grill shortly before the shooting. Davis contends that the distance from the grill to the site of the shooting was so far that he could not have moved from the grill to the spot of the shooting in time to be the assailant. He believes the jury would have been better able to see this if trial counsel had introduced the defense' set of photos. — At the habeas hearing, trial counsel testified that the state's photos were of better quality and that it was to the petitioner's advantage to show that the grill was so far removed from the spot of the shooting that it didn't even appear in the photos.
A review of the record shows that at trial Michael Tripp testified as to the grill's location (Exhibit 6, Transcript, April 7, 1994, p. 15), demonstrating that the location was beyond CT Page 9895 the edge of the photographs. Jeffrey Hunter, another defense witness, also testified to the grill's location, utilizing the state's photograph (Exhibit 6, p. 50). The petitioner himself testified as to the location of the grill, utilizing the state's photograph (Exhibit 7, Transcript, April 8, 1994, p. 9). The trial judge questioned the petitioner regarding the location of the grill and had the petitioner prepare a sketch of the basketball court, showing the location of the entrance, the kegs and the grill, which sketch was shown to the jury (Exhibit 7, Transcript, April 8, 1994, pp. 16-18).
The court finds that failure of trial counsel to introduce defense photographs of the crime scene and use by trial counsel of the state's photographs did not constitute ineffective assistance of counsel and that there is no reasonable probability that the result of the trial would have been different had the defense' photographs been introduced.
The court finds that the petitioner has failed to establish, by a fair preponderance of the evidence, that the acts or omissions of trial counsel at trial, taken singly or in combination, constituted ineffective assistance of trial counsel.
 V.
The petitioner also alleges actual innocence, based upon newly discovered evidence. New evidence is that which "is not cumulative, was not available to the petitioner at his criminal trial, and could not have been discovered by him at the time by due diligence", Miller v. Commissioner of Correction,242 Conn. 745, 789, fn. 29.
In his petition, the petitioner claimed as newly discovered evidence, testimony to be offered by two individuals, Kevin Eason and Rob Bowens, who would testify they were present at the crime scene and witnessed an "unidentified black male", not the petitioner do the shooting. Neither Eason nor Bowens appeared at the habeas hearing, and any testimony either might offer remains speculative. At the habeas hearing, the petitioner, Derrick Trent and Jeffrey Hunter, all witnesses at the trial, testified. This court finds nothing in their testimony which meets the definition of newly discovered evidence.
Our Supreme Court has recently addressed, but declined to decide, the question whether a habeas petitioner's claim of CT Page 9896 actual innocence must be based on new evidence, Clarke v.Commissioner of Correction, 249 Conn. 350, 358, and has stated that this should be regarded as an open question in our habeas jurisprudence, Id. Accordingly, the court will proceed to determine if the petitioner has met the standard of proof required to support a "freestanding claim of actual innocence", Id., at 355.
Such standard of proof has been established by our Supreme Court in Miller v. Commissioner of Correction, supra:
First, taking into account both the evidence produced in the original trial and the evidence produced at the habeas hearing, the petitioner must persuade the habeas court, by clear and convincing evidence, as that standard is understood and applied in the context of such a claim, that the petitioner is actually innocent of the crime of which he stands convicted.
Second, the petitioner must establish that, after considering all the evidence and the inferences drawn therefrom, as the habeas court did, no reasonable fact finder would find the petitioner guilty, Id., at 791, 792.
The Miller court emphasizes that the standard of proof, as applied to a habeas claim of actual innocence, is a "very demanding standard" and one that "forbids relief whenever the evidence is loose, equivocal or contradictory", Id., at 795 (citation omitted).
After careful review of the record, the court concludes that the petitioner has fallen far short of meeting his burden of proof. There was sufficient evidence in the record to support the jury's verdict. Marcus Roundtree testified he saw the petitioner shoot Willie Riddick.(Exhibit 3, Transcript, April 5, 1994, p. 44). Dildred Peoples testified she saw the petitioner remove a shotgun from a motor vehicle; she turned away to leave, heard "a couple of shots" and turned back to see Riddick lying on the ground, shot (Exhibit 5, Transcript, April 6, 1994, pp. 12, 13) There was expert testimony that Riddick suffered serious physical injury by reason of a gunshot wound. There is nothing in the record of the trial or the habeas hearing which requires a conclusion that the petitioner was actually innocent.
The court finds that the petitioner has failed to establish, by clear and convincing evidence, that he is actually innocent of CT Page 9897 the crime of which he stands convicted. Further, the court finds that the petitioner has failed to establish, by clear and convincing evidence, that, considering all the evidence and the inferences drawn therefrom, no reasonable factfinder would find the petitioner guilty of the crime for which he stands convicted.
 VI
The petitioner also claims ineffective assistance of counsel by reason of trial counsel's failure to object to an allegedly erroneous jury instruction by the trial judge.
 The instruction at issue concerned the element of intent. It reads, in pertinent part: "Intent, of course, is a mental process. A person may take the stand and testify as to what their intention was. Mr. Davis came here and he testified. He said, I didn't shoot the gun, and I didn't shoot Mr. Riddick. I didn't intend obviously to hurt him. You may believe that testimony or not, according to whether or not you find that it warrants belief." (Exhibit 2, Transcript, April 12, 1994, p. 63).
A review of the petitioner's trial transcript reveals that petitioner never stated, "I didn't intend obviously to hurt him".
The petitioner claims that the quoted sentence "implied consciousness of guilt thereby weakening his alibi, along with the presumption of innocence" The court is not persuaded.
Reading the quoted passage in context, the judge is not quoting, but summarizing, the petitioner's testimony in the course of giving an instruction with regard to intent. The judge summarizes in an effort to distinguish for the jury intent as stated by an actor, from intent as inferred from an act. The passing comment is intended to be illustrative and a fair reading of the comment is: I didn't shoot Riddick; obviously I didn't intend to cause him serious physical harm. The instruction on the element of intent, taken in its entirety, was correct and the judge had given a cautionary instruction that should he incorrectly state any evidence, the jurors were to rely on their own recollection (Transcript, p. 39). This court finds that it was not reasonably possible that the jury was misled by the challenged comment. State v. Moran, 53 Conn. app. 406, 410 and see State v. DelVecchio, 191 Conn. 412, 424. Nor did trial counsel's failure to object to the challenged phrase constitute ineffective assistance of counsel. CT Page 9898
 VII
The petitioner claims that trial counsel failed to consult with him regarding a probable cause hearing. The claim is without merit. There was no probable cause hearing nor was petitioner entitled to such a hearing.
The petitioner claims ineffective assistance of counsel by reason of trial counsel's failure to "take and pursue Petitioner's Sentence Review Hearing, allowing same to be dismissed."
Following sentencing of the petitioner, on June 3, 1994, the clerk, as required by General Statutes, Section 51-195, stated:
 "May the record reflect that the defendant is receiving notice of right to have sentence reviewed, notice of right to appeal, application for waiver of fees, costs and expenses on appointment of counsel on appeal and notice of application and inmate affidavit."
Trial counsel responded:
 "It's my intention, your Honor, to go over these matters with Mr. Davis downstairs at the present time and to file the paperwork this morning before Mr. Davis leaves the facility."
At the habeas hearing, trial counsel was asked if he pursued sentence review on behalf of the petitioner. He answered: Probably, no. He testified that sentence review was normally pursued by the trial public defender's office and that he had no information in his file to indicate that he had filed for sentence review. The court finds that trial counsel's failure to pursue sentence review on behalf of the petitioner constituted ineffective assistance of sentencing counsel, James L. v.Commissioner of Correction, 245 Conn. 132.
By way of relief, the court orders that the thirty day time limit of General Statutes, Section 51-195 be waived and that the petitioner be afforded thirty days from the time of receipt of this decision to apply for sentence review of the conviction at issue.
The court finds that the petitioner has failed to establish, by the requisite standards of proof, CT Page 9899
Judgment may enter for the petitioner in accordance decision.
By the Court,
Downey, J.